IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-00951-WJM-MEH

DAVID JAMES CROSBY,

       Plaintiff,

v.

MARGARET HEIL,
J.D. SCOLLARD,
CHRISTINE TYLER,
CHRISTINA MARQUEZ,
RICH LINS,
BURL MCCULLAR,
JAYLYNNE KOCH,
SAMUEL DUNLAP, and
CAPT. CRISTELLI,

       Defendants.

_____

## RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT
_____

Before the Court is Defendants' Motion for Summary Judgment [filed April 29, 2011; docket #93].  Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #94].  The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication.  For the reasons that follow, the Court RECOMMENDS that the motion be **granted**.[1]

_____

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file

I.    **BACKGROUND**

A.    <u>Findings of Fact</u>

The Court finds the following facts, some of which are stipulated by the parties and the

remainder viewed in the light most favorable to the Plaintiff, who is the non-moving party in this

matter.  The Court notes that several of the "Disputed Facts" Plaintiff asserts are legal conclusions

lacking factual support.  Standing alone, such assertions are not sufficient to survive a Motion for

Summary Judgment and are, therefore, excluded from the Court's findings.

1.    Defendants are or were employed by the Colorado Department of Corrections ("CDOC").

(Stipulated)[2]

2.    Plaintiff is presently housed at Kit Carson Correctional Center ("KCCC").  During the times

relevant to his prisoner complaint, Plaintiff was housed at Arrowhead Correctional Center

("AHCC") and Fremont Correctional Facility ("FCF").  (Stipulated)

3.    On October 3, 1994, Plaintiff was convicted of two counts of sexual assault in the First

Degree under Colo. Rev. Stat. § 18-3-402 and sentenced to a determinate sentence of 32

years' confinement in the CDOC on each count to run concurrently.  Plaintiff committed the

crime on November 19, 1993.  On April 2, 1998, Plaintiff's sentence was reconsidered and

altered to a determinate sentence of 30 years for each count to run concurrently.  (Stipulated)

4.    Plaintiff was not sentenced under the Colorado Sex Offender Lifetime Supervision Act

written objections to the proposed findings and recommendations within fourteen (14) days after
being served with a copy may bar the aggrieved party from appealing the factual findings of the
Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140,
155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

[2]The term, "stipulated," refers to those facts stated by the Defendants in their motion and
"admitted" by the Plaintiff in his response to the motion.

(SOLSA) found in Colo. Rev. Stat. § 18-1.3-1004(3), under which a sex offender sentenced to a term of an indeterminate number of years is required to participate in sex offender treatment while incarcerated.  (Stipulated)

5.    Plaintiff participated in sex offender treatment while at AHCC and FCF and completed Phase I of the treatment program.  (Stipulated)

6.    Plaintiff was enrolled in Phase II of sex offender treatment at AHCC during the times relevant to his Amended Complaint and prior to his termination from sex offender treatment. (Stipulated)

7.    Defendant Scollard conducted an evaluation of Plaintiff's treatment in January 2009. (Docket #34 at 34.)  On the section of the form assessing "problem solving skills," it appears[3] Scollard wrote a note stating "disengage → legal pursuits" and gave Plaintiff a score of "4" to indicate Plaintiff was "[n]ot working on [the] issue." (*Id.* at 36.)

8.    On February 5, 2009, Plaintiff met with Defendant Cristelli in Cristelli's office in the kitchen to discuss allegations that Cristelli was not providing sufficient food for Plaintiff and other prisoners.  During this meeting, Cristelli called Plaintiff a "punk" and a "weasel" and told Plaintiff he would be sent to a private facility to "see how [he] like[d] the food over there." (*Id.* at ¶¶ 9-11.)

9.    Also on February 5, 2009, Plaintiff met with Defendants Scollard and Cristelli to discuss Plaintiff's complaints regarding the food service and his diet.  (Docket #93-3.)  During the meeting, the parties reached a resolution which Plaintiff found satisfactory.  (*Id.*)  In the

---

[3]The note is difficult to read because of apparent highlighting over the handwritten text.  For purposes of summary judgment, the Court construes the ambiguity in Plaintiff's favor.

future, Plaintiff was to bring his concerns to Cristelli.  (*Id.*)  Plaintiff was also permitted to speak directly with "the nurse in charge of dietary for DOC."  (*Id.*)

10.     At the February 5, 2009 meeting between Plaintiff, Defendant Scollard, and Defendant Cristelli, the parties also discussed statements Plaintiff made to Cristelli during an earlier conversation.  (*Id.*)  Plaintiff's statements were that "he has been in prison too long for his crime...[,][h]is crime was not as bad as the others that had recently paroled...[, and][k]eeping him in prison was too great a cost to the state."  (*Id.*)  Plaintiff reiterated these beliefs in the February 5, 2009 meeting.  (*Id.*)

11.     In a meeting between Defendant Scollard and Plaintiff on February 11, 2009,  Scollard told Plaintiff that his "legal pursuits" would cause him "nothing but problems."  Scollard clarified that the "legal pursuits" of which he spoke included Plaintiff's grievances against Defendant Cristelli and Plaintiff's role in assisting other inmates with "frivolous" legal actions.  (*Id.* at ¶¶30-31.)

12.     On March 3, 2009, Plaintiff was given an opportunity during a sex offender group treatment session to discuss the statements he made to Defendant Cristelli regarding the seriousness of his offense and fairness of his detention.  (Docket #93-4.)  The clinical note documenting this session indicates that Plaintiff resisted group feedback and became verbally defensive. (*Id.*)  Plaintiff also made statements suggesting that "others who have gotten out had not done their treatment, but that he ahd [sic]."  (*Id.*)

13.     Plaintiff was placed on probation in Phase II of his treatment in March 2009.  (Docket #93-5, p.1)  Plaintiff was informed that his problem areas were: (1) "[a]ppears argumentative, resistive, and defensive;" (2) "[f]ails to apply what is learned in group to behavior;" (3)

"[d]emonstrates inappropriate motivation for being in treatment;" and (4) "[f]ails to demonstrate working through minimization and denial." (*Id*.)  The Memorandum dated March 2009 also notes that Plaintiff made statements in the March 2, 2009 group session "that were reflective of entitlement and lack of commitment to treatment." (*Id*.) (Stipulated)

14.     On March 13, 2009, Defendant Scollard presented Plaintiff with a Probation Contract on behalf of SOTMP.[4]  (*Id.* at ¶34.)  As part of Plaintiff's probation, he was required to complete various assignments related to his "problem areas." (Docket #93-5 at 2.)  Plaintiff was also informed that, while on probation, he would not be eligible for a positive recommendation for parole.  (*Id.*)

15.     Plaintiff chose to sign the Probation Contract, despite his later contention that many of the allegations contained in the contract were not true.  (Docket #34 at ¶¶37, 39.)

16.     Several of the probation assignments required Plaintiff to discuss his thoughts, feelings, and behaviors.  Plaintiff claims the thoughts, feelings, and behaviors discussed were not accurately attributable to him.  (*Id.* at ¶50.)

17.     Plaintiff was required to "re-do" some of the assignments in his Probation Contract because his work was deemed unacceptable.  (Stipulated)

18.     It was later revealed by Defendant Tyler that Plaintiff's work was deemed unacceptable because Plaintiff failed to follow through with his safety plan.  (Docket # 35, p. 24, ll. 5-13.)

---

[4]Plaintiff has not provided the Court with a copy of the probation contract.  In the absence of this document, the Court looks to the March 2009 Memorandum [docket #93-5] for the terms of Plaintiff's probation.  However, the Court notes that the March 2009 Memorandum does not contain Plaintiff's signature and was only signed by Defendant Scollard.

19.     On July 10, 2009, Plaintiff was placed on Notice Status in Phase II of sex offender treatment. A memorandum dated July 10, 2009 notes that Plaintiff did not recognize or acknowledge his problem areas, and that he needed to take responsibility for his thoughts, feelings, and behaviors.  (Stipulated)

20.     On or about August 27, 2009, Plaintiff served Defendants Scollard, Tyler, Marquez (and Valdez) with a Notice of Commencement of Private Administrative Remedy. (Docket #34 at ¶106.)

21.     On September 2, 2009, Plaintiff was given a Notice of Suspension and Right to SOTMP Termination Review.  The Notice stated that Plaintiff was recommended for termination from treatment due to his demonstration of a "lack of progress in treatment, a lack of motivation for treatment, and a failure to meet program expectations."  (Docket #93-8.) (Stipulated)

22.     The Notice described in detail fifteen different problematic behaviors and identified multiple violations of the treatment contract. (*Id.* at 2-7.)

23.     Plaintiff requested a SOTMP termination review.  (Stipulated)

24.     Plaintiff received notice that a termination hearing would take place on September 10, 2009. (Stipulated)

25.     On September 2, 2009, Plaintiff was transported from AHCC to FCF and placed in the Admission and Orientation Unit.  The Admission and Orientation Unit at FCF processed all new arrivals.  Moving an offender from AHCC to FCF upon suspension from sex offender treatment was common in 2009 due to the change in the offender's program status from active to suspended.  (Stipulated)

26.   Plaintiff was not placed in segregation while at FCF.  (Docket #93-12, p. 4, no. 10.)

27.   Plaintiff asserts that the conditions in the Admission and Orientation Unit at FCF are "identical" to segregation, and that he was housed there for 28 days.  (Docket #125 at ¶15; docket #34 at ¶193.)

28.   On September 10, 2009, a termination hearing was held at FCF.  (Stipulated)

29.   At the hearing on September 10, 2009, confidential evidence was addressed regarding polygraph reports and results.  The hearing panel completed an evaluation to Determine Dangerousness and Reliability of Confidential Information.  (Stipulated)

30.   At the hearing on September 10, 2009, Defendant Scollard read on the record the text of the Notice of Suspension dated September 2, 2009.  The document noted that Plaintiff was failing to make sufficient and sustained progress in treatment, was not applying what he was learning in treatment, and was not practicing relapse prevention.  (Stipulated)

31.   The hearing on September 10, 2009 was continued to September 15, 2009.  (Stipulated)

32.   At the hearings on September 10 and 15, 2009, Plaintiff was able to testify on his own behalf.  At the hearing on September 15, 2009, Plaintiff was able to present testimony of other offenders.  (Stipulated)

33.   At the hearing on September 15, 2009, Plaintiff was again allowed to testify on his own behalf and present his defense.  (Stipulated)

34.   Following the hearing, Plaintiff was terminated from sex offender treatment due to his behavior, which was perceived by those reviewing the hearing to be hostile and manipulative.  Plaintiff's other problematic behaviors included minimizing his crime, performing deficiently on multiple assignments, and statements in groups that were

7

indicative of a lack of progress.  (Stipulated)

35.     Plaintiff received a written Disposition following his termination hearing.  (Stipulated)

36.     Plaintiff asserts that the Disposition he received did not accurately reflect the evidence presented.  (Docket #34 at ¶¶136-145.)

37.     A clinical note dated September 28, 2009 indicates that the termination contract was sent to Plaintiff along with an eligibility questionnaire allowing Plaintiff to re-apply for admission to sex offender treatment.  (Stipulated)

38.     The Eligibility Questions required Plaintiff to explain how his termination from treatment was  part of his cycle of abuse. (Docket #133-1.)

39.     Plaintiff asserts that he was required to admit to allegations that he believes are false as a condition for readmission to sex offender treatment.  (Docket #32 at ¶149.)

40.     Plaintiff's failure to meet the requirements of sex offender treatment resulted in Plaintiff receiving a sub-code "D" classification.  (Stipulated)

41.     Sex offenders are placed in treatment according to a priority list as outlined in CDOC Administrative Regulation 700–19. (Stipulated)  Plaintiff would, therefore, be required to wait until there was space available in the program before he could resume treatment. (Docket #34 at ¶147.)

42.     Defendant Heil was involved in the development of the SOTMP policies and procedures during her term as administrator and acting administrator of SOTMP.  Defendant Heil has been involved in the implementation of CDOC Administrative Regulation 700-32 from February 2008 to the present.  (Stipulated)

B.     Procedural History

Plaintiff, proceeding *pro se*, initiated this suit on April 19, 2010.  (Docket #1.)  Plaintiff brings this action pursuant to Section 1983 of Title 42 of the United States Code, asserting violations of  the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. (Docket #34 at 19-30.)   Following an order by the Court [docket #33], he filed an amended complaint on October 7, 2010.  (Docket #34.)

Plaintiff's Amended Complaint sets forth seven causes of action.  In Claim One, Plaintiff alleges Defendants violated his rights under the First and Fourteenth Amendments by giving him a negative clinical evaluation, suspending him from treatment, and relocating him to FCF as retaliation for the grievances he filed and the legal assistance he provided to other prisoners.  (*Id*. at 19-20.)   In Claim Two, Plaintiff asserts that Defendants deprived him of a liberty interest under the Fourth and Fourteenth Amendments by placing him in the "hole" for a period of 28 days without due process of law.  (*Id*. at 21.)   In Claim Three, Plaintiff asserts that Defendants violated his Fifth Amendment privilege against self-incrimination by requiring him to write and speak about his thoughts, feelings, and behaviors as a condition of his return to treatment.  (*Id*. at 22.)   In Claim Four, Plaintiff alleges Defendants "tortured" him in contravention of the Eighth Amendment through various assignments he was required to complete during treatment.  (*Id*. at 23-25.)   Plaintiff's Fifth Claim avers that Defendants violated his Fourteenth Amendment liberty interest in a compliant record by assigning him a sub-code "D" classification.  (*Id*. at 26.)   In Claim Six, Plaintiff alleges Defendants acted in conspiracy to violate his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights with the intent of committing "libel, slander, violations of contracts, fraud, deprivation of property, extreme mental cruelty, forced selfincrimination [sic], and unwarranted

9

suspension and termination from treatment, and third degree assault." (*Id*. at 27.)  In Plaintiff' final

claim, he alleges that the termination hearing did not satisfy the requirements of due process under

the Fourteenth Amendment.  (*Id*. at 28-30.)

## II.   LEGAL STANDARDS

### A.   Fed. R. Civ. P. 56

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v.*

*South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary

judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the

governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving

party bears the initial responsibility of providing to the Court the factual basis for its motion and

identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together

with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that

the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317,

323 (1986).  However, the non-moving party has the burden of showing that there are issues of

material fact to be determined.  *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party

may not rest on the allegations contained in his complaint, but must respond with specific facts

showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380

(2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

B.      Treatment of a Pro Se Plaintiff's Pleadings

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). In other words, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

III.    ANALYSIS

In their Motion for Summary Judgment, Defendants present three affirmative defenses. First, Defendants argue that Defendant Heil cannot be liable under section 1983 because Plaintiff has not shown that Defendant Heil personally participated in the alleged offenses. Second, Defendants assert sovereign immunity under the Eleventh Amendment regarding Plaintiff's claims for monetary damages and declaratory relief against Defendants in their official capacities. Finally, Defendants claim they are entitled to qualified immunity for all other claims for relief. The Court will address each defense in turn.

A.    Lack of Personal Participation

As a general rule, an individual cannot be liable under section 1983 unless he or she personally participated the alleged violation. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). In *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010), the Tenth Circuit recognized that the Supreme Court, in *Iqbal*, further narrowed the already limited theory of supervisory liability. The *Dodds* court explained *Iqbal*'s holding that "when a plaintiff sues an official under *Bivens* or § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds*, 614 F.3d at 1198 (quoting *Iqbal*, 129 S. Ct. at 1949).

Here, Plaintiff claims that Defendant Heil's personal participation arises from her involvement in the development and implementation of the administrative regulations governing the sex offender treatment program. (Docket #125 at 5.) While *Dodds* does permit liability under this theory, a plaintiff must show: "(1) the defendant promulgated, created, implemented or possessed

12

responsibility for the continued operation of the policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional depravation." *Dodds*, 614 F.3d at 1199.

Defendants admit that Heil was involved the development of the sex offender treatment program and its corresponding policies and procedures. (Docket #133 at 3.) However, Defendants contend that Plaintiff has offered no evidence showing that a constitutional violation occurred. (*Id.*) Plaintiff appears to argue that the constitutional violations lie in Defendants' failure to comply with the administrative regulations governing the termination hearing, in the CDOC's policy that inmates suspended from treatment will be placed in "the hole," and in the requirement that inmates terminated from treatment must admit the allegations against them to become eligible for readmission to treatment. (Docket #125 at 5.) Plaintiff further asserts that Heil knew or should have known of the violations, but he provides no factual support for her direct involvement in the proceedings against Plaintiff. (*See id.*)

The constitutional violations Plaintiff identifies in support of his argument regarding Defendant Heil are essentially identical to his legal claims. Because, as discussed below, the Court finds that Plaintiff has failed to demonstrate genuine issues of fact as to whether Defendants' conduct violated Plaintiff's constitutional rights, a determination on Heil's personal participation is not material to the outcome of the case. The Court notes, however, that Plaintiff's failure to provide evidence regarding Heil's mental culpability renders his claims against Heil untenable. Therefore, the Court recommends the District Court grant summary judgment in favor of Heil on all claims in which she is named as a defendant.

B.    Sovereign Immunity

13

Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett,* 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village,* 501 U.S. 775, 785-86 (1991). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex parte Young,* 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.,* 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiff alleges in his Amended Complaint that he seeks both monetary damages and a declaration that the Defendants committed various wrongs, including violations of Plaintiff's Constitutional rights, fabrication of evidence, and acts of libel and slander. (Docket #34 at 32-33.) Plaintiff argues that a declaration regarding the wrongfulness of these past acts should not be

excluded under *Buchwald* because it may lead to a change in future conduct.  (Docket #125 at 4.)  However, regardless of the incidental effects that a declaration of wrongdoing may have on prison policy, the declaratory relief Plaintiff seeks does not mandate such changes.  Thus, the requested declaratory judgments fall within the category of relief barred by the Eleventh Amendment.  *See Buchwald*, 159 F.3d at 495.  The Court recommends that the District Court grant Defendants' Motion in this regard and dismiss Plaintiff's claims against Defendants in their official capacities for monetary damages and declaratory relief.

C.     Qualified Immunity

The Defendants assert that they are entitled to qualified immunity on claims against them in their individual capacities.  Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an entitlement not to stand trial or face the other burdens of litigation.  *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).  The privilege is an immunity from suit rather than a mere defense to liability.  *Id.*   When a defendant asserts the defense of qualified immunity at summary judgment, the burden shifts to the plaintiff to overcome the asserted immunity.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

Plaintiff's seven claims fall into six categories: (1) First Amendment retaliation; (2) Fourteenth Amendment deprivations of liberty; (3) Fifth Amendment self-incrimination; (4) Eighth

Amendment cruel and unusual punishment; (5) conspiracy; and (6) Fourteenth Amendment procedural due process.  For each category, the Court will examine first whether the Plaintiff has demonstrated on supported facts that the Defendants violated his constitutional rights.  If the Plaintiff has established sufficient facts to support a constitutional violation, the Court will proceed to determine whether the right was clearly established at the time of the alleged conduct.

1.      First Amendment Retaliation

In Claim One of Plaintiff's Amended Complaint, he asserts that Defendants violated his First and Fourteenth Amendment rights by retaliating against him for filing grievances and assisting other prisoners with legal issues.  (Docket #34 at 19-20.)   Construing Plaintiff's Amended Complaint liberally, the Court identifies three instances of allegedly retaliatory conduct: (1) Defendant Scollard's alleged decision to mark Plaintiff down in a monthly evaluation for Plaintiff's "legal pursuits"; (2) Defendant Cristelli's alleged use of "threats and intimidation" and "verbal assault[]" in a "profanity laced tirade that included name calling" after Plaintiff confronted Cristelli regarding suspected food shortages; and (3) Defendants' suspension of Plaintiff from treatment and subsequent transfer of Plaintiff to FCF after Plaintiff filed grievances on behalf of himself and others against the program.  (*Id*.)

The Tenth Circuit has adopted a three-part test which requires plaintiffs alleging retaliation to show:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).  The Court will analyze each alleged instance of retaliation separately to determine whether Plaintiff has established the three elements.

Plaintiff alleges that the first instance of retaliation occurred in January of 2009 when Defendant Scollard allegedly marked Plaintiff down for engaging in "legal pursuits."  While the January 2009 evaluation does bear a note stating "disengage → legal pursuits," the meaning of the note is unclear.  (Docket #34 at 34, 36.)  Plaintiff has not provided any evidence of the "legal pursuits" he was engaged in prior to the January 2009 evaluation.  Indeed, none of the grievances Plaintiff describes in his Amended Complaint were brought to Defendants' attention before February of 2009.  Plaintiff's subsequent discussion with Scollard on February 11, 2009 regarding his "legal pursuits" describes actions on behalf of other prisoners and Plaintiff's grievances against Defendant Cristelli. (*Id.* at ¶31.)

Regarding the activities identified, the Court notes first that Plaintiff's assistance of other prisoners does not qualify as protected speech for purposes of retaliation.  *See Peterson*, 149 F.3d at 1144 ("[A]n inmate 'does not have a protected interest in providing legal representation to other inmates.'") (quoting *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir. 1990).  Furthermore, Plaintiff's grievances against Defendant Cristelli, which did not become known until February 2009, could not have been considered by Defendant Scollard at the time of the January evaluation.  Because Plaintiff has not demonstrated that he engaged in a protected activity prior to January 2009, the January 2009 evaluation cannot be construed as retaliatory.  *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668-69 (7th Cir. 2006) ("proof of retaliation ... presupposes that the decision-maker knew that the plaintiff engaged in a statutorily protected activity, because if an

employer did not know the plaintiff made any complaints, it cannot be trying to penalize him for making them") (quotations and citations omitted). Plaintiff's failure to provide evidence in support of the first element renders further analysis on the second and third elements of *Shero* unnecessary. The Court recommends the District Court grant summary judgment for Defendants concerning the first instance of alleged retaliation.

The second instance of alleged retaliation involves a discussion between Plaintiff and Defendant Cristelli regarding food shortages. Defendants do not address the first element of *Shero* for any of the alleged instances of retaliation. However, the Court finds that Plaintiff's complaints to Cristelli on February 11, 2009 qualify as protected activity. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir. 2007) (finding that speech calculated to disclose misconduct is protected by the First Amendment). Turning to the second element, the Court finds that Cristelli's "profanity-laced tirade" and "verbal assault" of Plaintiff do not constitute adverse action within the meaning of *Shero*. While such an experience may be unpleasant, it is not sufficiently injurious to chill the expression of a person of ordinary firmness. *See Wash v. Gilless*, 215 F.3d 1328 (table), 2000 WL 659225, *3 (6th Cir. May 11, 2000) (finding that "[t]he use of profanity in addressing an inmate's request... would not deter person of ordinary firmness."); *see also Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (stating that "verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute a violation of any federally protected right...") Plaintiff's allegations of "threats and intimidation" are not supported by specific facts. However, even if Plaintiff could substantiate the threats, "verbal harassment, threats, or taunts do not rise to the level of retaliation." *Teaque v. Hood*, No. 06-cv-01800-LTB-CBS, 2008 WL 2228905, at *10

(D. Colo. May 27, 2008).  Because Plaintiff has not met the second element of *Shero*, Plaintiff's claim of retaliation against Cristelli based on the February 11, 2009 discussion is not viable and the Court recommends summary judgment in this regard.

The third alleged instance of retaliation involves Plaintiff's relocation, suspension, and subsequent termination from treatment less than a month after Plaintiff filed formal grievances against Defendants Scollard, Tyler, and Marquez.  Though Defendants do not address the first or second elements of *Shero*, it is beyond dispute that Plaintiff's grievances constitute a protected activity and that Defendants' actions were adverse.  *See Frazier v. Dubois*, 922 F.2d 560, 561-62 (10th Cir. 1991) (finding that prison officials may not transfer an inmate in retaliation, even though prisoners are generally not entitled to remain in a particular institution).  Thus, the Court proceeds to the third element to determine whether Plaintiff has provided sufficient evidence showing that his transfer, suspension, and termination were substantially motivated by Plaintiff's protected activities.  *Shero*, 510 F.3d at 1203.

Plaintiffs claiming retaliation  must provide more than allegations or suspicions.  *Peterson*, 149 F.3d at 1444.  Rather, they must set forth specific facts showing that but for the protected activity, the adverse action would not have occurred.  *Smith*, 899 F.2d at 949-950.  In this case, Plaintiff's strongest evidence of retaliation is circumstantial: Defendants initiated termination proceedings within a month of Plaintiff's grievances. (Docket #34 at ¶¶106-107.)  While an inference of retaliation may be reasonable in some instances where the adverse action occurs in close proximity to the protected activity (*See Johnson v. Stovall*, 233 F.3d 486, 489 (7th Cir. 2000) (finding that a chronology of events was sufficient to survive a motion to dismiss on a claim of retaliation)), the facts of this case do not give rise to such an inference.  Plaintiff was placed on

19

probation in March 2009, several months before he filed any formal grievances against Defendants. (Docket #93-5.)  As part of his probation, Plaintiff was given notice of his "problem areas" and told he needed to improve.  (*Id*.)  As of July 10, 2009,  Plaintiff failed to recognize his treatment issues and was, consequently, placed on Notice status.   (Docket #93-7.)   By the time Plaintiff served Defendants with notice of his grievances on August 27, 2009, he had already been on Notice status for over a month. (*See* docket #34 at ¶106.)   While it is true that Plaintiff's protected activity occurred in close proximity to his suspension, the context of the suspension renders its timing unremarkable. In light of Plaintiff's consistently poor performance in treatment, no reasonable inference of retaliation can be drawn from his suspension, relocation, and subsequent termination from treatment.[5]

The Court finds that Plaintiff has failed to demonstrate genuine issues of material fact concerning his claim for retaliation, and thus, recommends that District Court grant Defendants' Motion for Summary Judgment with respect to Claim One.

### 2.   Fourteenth Amendment Deprivations of Liberty

In Claims Two and Four, Plaintiff asserts that Defendants violated his rights under the Fourteenth Amendment by placing him in "the hole" for 28 days and by classifying him as a sub-code "D", respectively.

Generally, a plaintiff must make two showings in order to proceed on a procedural due process claim.  *See Brammer-Hoelter*, 492 F.3d at 1209.  First, a plaintiff must demonstrate that he

---

[5]The Court notes that Plaintiff's relocation from AHCC to FCF was based on an administrative regulation authorizing a facility transfer for offenders who have failed to comply with program requirements. (Docket #93-12 at 4.)  Because Plaintiff has failed to raise issues of material fact showing the suspension was substantially motivated by retaliation, the Court finds that he has also failed to with respect to the subsequent administrative transfer.

possesses a protected liberty or property interest, and second, a plaintiff must show the procedures utilized were inadequate under the circumstances. *Id.*

Plaintiff's claims are governed by the Supreme Court's opinion in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), which found that due process liberty interests created by state regulations are "generally limited to freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." The *Sandin* Court expanded upon its analysis in *Wolff v. McDonnell*, 418 U.S. 539 (1974) to determine whether the Due Process Clause afforded an inmate, who received 30 days in punitive segregation following a disciplinary hearing, a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*. *Id.* at 483-84.

Following *Sandin*, the Supreme Court confirmed that an examination of prison rules or regulations themselves is no longer an appropriate method for ascertaining the existence of a liberty interest; rather, courts must look to the conditions of confinement to determine whether the inmate has suffered a "hardship" as set forth in *Sandin*. *See Wilkinson v. Austin*, 545 U.S. 209, 221-23 (2005); *see also Estate of Miki Ann DiMarco v. Wyoming Dep't of Corrs.*, 473 F.3d 1334, 1339 (10th Cir. 2007) ("[s]tate policies or regulations will not create the basis for a liberty interest in the conditions of confinement so long as they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). In fact, in Colorado, state laws and regulations themselves do not entitle inmates to remain in the general population absent certain conduct. *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).

Plaintiff's second claim alleges a violation of the Fourteenth Amendment based upon his transfer from AHCC to the Admission and Orientation unit at FCF. Plaintiff concedes that he

"enjoys no constitutional right to remain in a particular facility," but argues that the transfer was retaliatory and, thus, unconstitutional.  (Docket #125 at 8.)  The Court agrees that Plaintiff was not entitled to a hearing prior to his transfer so long as the transfer was not motivated by retaliation.  *See Frazier*, 922 F.2d at 561-62.  However, as the Court has already discussed, the facts do not give rise to a reasonable inference that Plaintiff's protected activity, rather than his poor performance, was the but-for cause of his transfer.  Accordingly, the Court recommends the District Court find that Plaintiff's transfer from AHCC to FCF did not violate the Fourteenth Amendment.

Plaintiff's second claim is also based on the conditions of his confinement in the Admission and Orientation Unit at FCF.  Defendants assert that Plaintiff was not placed in administrative segregation at FCF; Plaintiff contends that the conditions of the unit were "identical to those in segregation." (Docket #125 at ¶15.)  Although the nature of Plaintiff's confinement is disputed, the factual issues are not material in light of the law.  In *Sandin*, the Supreme Court found that an inmate's 30-day assignment to solitary confinement was not an atypical or significant depravation.  *See Sandin*, 515 U.S. at 486.  Here, Plaintiff claims he was placed in "the hole" for 28 days.  While the Tenth Circuit has found a right to due process when an inmate is placed in segregation for an indefinite period of time (*See Toevs v. Reid*, 646 F.3d 752, 756-57 (10th Cir. 2011) (finding a right to due process for a prisoner placed in segregation for seven years without any knowledge of an end date), Plaintiff's confinement of 28 days falls below the 30-day period upheld in *Sandin* and well below the seven year period rejected in *Toevs*.  *See Sandin*, 515 U.S. at 486.  The Court finds that Plaintiff's temporary placement in the Admission and Orientation Unit pending the resolution of his termination proceedings does not raise a genuine issue of fact as to any entitlement to due process protections and recommends the District Court grant summary judgment in favor of Defendants on

Claim Two.

In Claim Five, Plaintiff alleges that his reclassification as a sub-code "D" violates a protected liberty interest. This Court addressed a nearly identical reclassification in *Hubler v. Lander,* No. 08-cv-02546-PAB-BNB, 2010 WL 935667, *1 (D. Colo. March 10, 2010) (unpublished). Like Plaintiff, the inmate in *Hubler* participated in sex offender treatment and was reclassified from a sub-code "R" to a sub-code "D." *Id.* Judge Brimmer found that "an inmate does not have a due process right in his sex-offender sub-classification" and accepted the recommendation of Magistrate Judge Boland to dismiss Plaintiff's Fourteenth Amendment claim. *Id.* The Court finds no distinction between the facts of *Hubler* and this case.

Plaintiff argues that his reclassification violates due process because of the alleged effect of the classification on his eligibility for parole and his earned-time credit. (Docket #125 at 9.) Plaintiff correctly asserts that a right to due process exists when a misconduct conviction will "inevitably affect[] the duration of [an inmate's] sentence." *Wilson v. Jones*, 430 F.3d 1113, 1121 (10th Cir. 2005) (quoting *Sandin*, 515 U.S. at 487). In *Wilson*, the Tenth Circuit contrasted the automatic and mandatory impact of a disciplinary conviction on an inmate's release date from the regime upheld in *Sandin* in which a disciplinary infraction was only one of several considerations affecting an inmate's early release. *Id.* The Court emphasized that "[t]his 'but for' causation is the kind of 'direct result' that *Sandin* requires for a disciplinary action to have an inevitable effect on a sentence." *Id.*

In this case, Plaintiff's sentence, parole eligibility date, and mandatory release date are pre-established as part of a determinate sentence. (Docket ##93-1 and 93-2.) Plaintiff's reclassification has not eliminated his eligibility for parole, as he has been reviewed for parole several times since

the change.  (Docket #125 at 41-42.)  Although Plaintiff's current sub-code "D" classification has made it considerably more difficult for him to return to sex offender treatment, Plaintiff is not precluded from future participation in the program.  In fact, Plaintiff is currently on a waiting list for readmission.  (*See* docket #125 at 9.)  Moreover, even if Plaintiff had remained in treatment and successfully completed the program, early parole would not have followed automatically.  (*See* docket #93-15 at 38 ll. 16-20.)  Defendant Tyler, the lead therapist, testified at Plaintiff's termination hearing that the treatment team has "no control" over when an offender is released from prison.  (*Id.*)

In addition to parole ineligibility, plaintiff alleges his earned-time was reduced by 40% as a consequence set forth in a probation contract.  (Docket #34 at ¶¶37-38.)  Having reviewed the March 2009 Memorandum for the terms of Plaintiff's probation, the court finds no evidence that this is true.[6]  (*See* docket #93-5.)  While the Memorandum states that inmates on probation will not be eligible for a positive recommendation for parole, it says nothing about earned-time or general eligibility for parole.  (*See id.*)

Plaintiff has failed to provide the court with evidence raising an issue of material fact that, but for his reclassification, he would be released at an earlier date. *See Wilson*, 430 F.3d at 1121. In light of the similarities in *Hubler* and Plaintiff's failure to show that the reclassification "inevitably affected the duration of his confinement," the Court finds that Plaintiff has failed to demonstrate he has a protected liberty interest in his sex offender sub-code classification.  At the very least, Plaintiff has not shown that any liberty interest he may have had in his classification was clearly established at the time of Defendants' conduct.  The Court recommends that the District

---

[6]The Court again notes that Plaintiff has not provided a copy of the probation contract which allegedly deprives him of parole eligibility and 40% earned-time.  In the absence of the contract, the Court relies on the March 2009 Memorandum for the terms of Plaintiff's probation.

Court grant summary judgment for Defendants on Claim Five.

        3.      Fifth Amendment Self-Incrimination

In Claim Three, Plaintiff alleges Defendants violated his Fifth Amendment privilege against self-incrimination by requiring him, as a condition of treatment, to admit to thoughts, feelings, and behaviors that Plaintiff claims were inaccurate. (Docket #34 at 22.)

In *McKune v. Lile,* 536 U.S. 24, 37-38 (2002), a plurality of the Supreme Court noted that "[a] prison clinical rehabilitation program...does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardship in relation to the ordinary incidents of prison life." The Tenth Circuit adopted this standard in *Wirsching v. Colorado*, 360 F.3d 1191, 1193-94 (10th Cir. 2004), a case in which the plaintiff's refusal to admit to sexual assault affected his opportunity to earn good-time credit and limited his visitation with family members. The Tenth Circuit held that these consequences "were not so severe as to likely compel [plaintiff] to be a witness against himself." *Id.* at 93. In this case, Plaintiff has not shown that the consequences he faced for refusing to participate in treatment, including the alleged loss of earned-time credit, were more severe than those upheld in *Wirsching*. Therefore, the Court finds that Plaintiff has failed to come forward with evidence demonstrating a genuine issue of material fact that his Fifth Amendment privilege against self-incrimination was violated, and recommends the District Court grant Defendant's Motion for Summary Judgment on Claim Three.

        4.      Eighth Amendment Cruel and Unusual Punishment

Plaintiff's fourth claim alleges that Defendants violated his Eighth Amendment rights by subjecting him to mental "torture." (Docket #34 at 23-25.) Plaintiff alleges some resulting physical

ailments, including headaches, constipation, insomnia, and gastrointestinal problems, but provides no other evidence of physical injury.  (*Id.* at 25.)

In order to have a cognizable Eighth Amendment claim against state officials, a plaintiff must allege facts demonstrating that: (1) the deprivation Plaintiff suffered is "sufficiently serious" (objective standard), and (2) the official had a culpable state of mind (subjective standard).  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).  Prison conditions may be "restrictive and even harsh" without meeting this factor. *Barney v. Pulshiper,* 143 F.3d 1299, 1311 (10th Cir. 1998).  Moreover, being subjected to threats of abuse or the vague possibility of assault from other inmates is not sufficiently serious to give rise to an Eighth Amendment violation.  *McBride v. Deer,* 240 F.3d 1287, 1291 n.3 (10th Cir. 2001).

Eighth Amendment claims predicated on emotional injury alone are disfavored in this Circuit.  *See Wallin v. Dycus*, 381 F. App'x 819, 824 (10th Cir. 2010) (affirming summary judgment where plaintiff's Eighth Amendment claim failed to identify a physical injury); *see also Fry v. Al-Abduljalil*, 164 F. App'x 788, 791 (10th Cir. 2006) (affirming summary judgment of an Eighth Amendment claim because plaintiff failed to demonstrate a triable issue of fact as to whether his stomach problems were related to his emotional distress).  While an inmate may be entitled to injunctive relief and punitive and nominal damages without showing physical injury, compensatory damages are statutorily barred by 42 U.S.C. § 1997e(e).  *Perkins v. Dep't. of Corr.*, 165 F.3d 803, 808 (10th Cir. 1999); *Phillips v. Steinbeck*, 2008 WL 821789, at *21 (D. Colo. Mar. 26, 2008) ("Based on the prior precedents of the Tenth Circuit, this court holds that § 1997e(e) does not bar Plaintiff's....Eighth Amendment rights.") (Recommendation by Magistrate Judge Mix accepted by Judge Miller)).  In light of Plaintiff's failure to demonstrate physical injury, the Court recommends

the District Court grant summary judgment regarding all compensatory relief Plaintiff seeks under the Eighth Amendment.

Whether Plaintiff is entitled to any relief is, of course, dependent on whether Defendants' conduct constitutes a sufficiently serious depravation, and whether Plaintiff can show Defendants possessed the requisite mental state. *See Farmer*, 511 U.S. at 834. Plaintiff alleges no deprivation *per se*, but rather, claims that his emotional suffering was the result of assignments he was required to complete for treatment. (Docket #34 at 23-24.) Specifically, Plaintiff claims that he was forced to rewrite a speech several times even though the content of the speech was allegedly satisfactory, and was forced to admit to thoughts and feelings that he did not actually possess. (*Id.*) With respect to the speech, Defendants concede the speech was "well-written" but claim that it was deficient for other reasons. (Docket #93-18 at 24, ll. 5-13.) While the Court is reluctant to second-guess the treatment decisions made by Defendants, any dispute of fact as to the quality of Plaintiff's speech is not material. Assuming Plaintiff's speech was sufficient, Defendants' request that Plaintiff rewrite the speech was a condition of Plaintiff's *voluntary* participation in the treatment program. Plaintiff has provided no evidence showing that his failure to comply with Defendants' instructions would have resulted in anything more than termination from the program itself. Absent a demonstrated medical need to remain in treatment, exclusion from treatment programs does not violate the Eighth Amendment. *See Matelsky v. Gunn*, 15 F. App'x 686, 687 (10th Cir. 2001) (finding that a plaintiff who failed to allege a serious medical need to participate in a drug treatment program did not have a viable Eighth Amendment claim based his exclusion from treatment). Plaintiff has alleged no such medical necessity. Defendants' requirements that Plaintiff repeat an assignment or discuss his thoughts and feelings in the context of a voluntary and non-necessary treatment program do not

27

constitute "sufficiently serious" deprivations warranting Eighth Amendment protection. *See id.*

Because Plaintiff has failed to meet the first prong of *Farmer*, the Court need not address Defendants' culpability. The Court recommends that the District Court grant summary judgment for Defendants on the entirety of Claim Four.

### 5.    Conspiracy

Plaintiff's sixth claim alleges that Defendants acted in conspiracy to violate his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. (Docket #34 at 27.) As factual support, Plaintiff cites statements from Defendant Scollard's interrogatories indicating that Defendants worked collaboratively in making treatment decisions. (*See* docket #125 at 3, no. 5.) Plaintiff also notes that Defendants held meetings to discuss his treatment. (Docket #34 at 27.)

To survive summary judgment on a claim of conspiracy, a plaintiff must make two showings. First, a plaintiff must "allege specific facts showing agreement and concerted action among [defendants.]" *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Second, a plaintiff must show that defendants acted with the purpose of "depriv[ing] a plaintiff of a constitutional or federally protected right." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990). "Conclusory allegations of conspiracy are insufficient to state a valid §1983 claim." *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989).

While Plaintiff has demonstrated that Defendants acted in concert to provide him with treatment, he has not provided any evidence that their purpose was to deprive him of a right. Plaintiff's speculation regarding Defendants' intentions does not qualify as factual support. *See id.* Accordingly, the Court recommends that the District Court grant summary judgment for Defendants on Claim Six.

6.        Fourteenth Amendment Procedural Due Process

Plaintiff's seventh claim alleges a violation of the Fourteenth Amendment based on Plaintiff's termination from sex offender treatment.  Plaintiff claims that the termination hearing did not constitute sufficient process to deprive him of his alleged liberty interest in remaining in the sex offender treatment program.

The Tenth Circuit has adopted a two-step inquiry for determining whether an individual has been deprived of Fourteenth Amendment procedural due process: "(1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process." *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001) (quoting *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994)).

Turning to the first inquiry, the Court asks whether Plaintiff has established a liberty interest protected by the Fourteenth Amendment.  Plaintiff claims that the liberty interest of which he was deprived is the right to participate in the sex offender treatment program.  In support of his claim, Plaintiff relies primarily on *Beebe v. Heil*, 333 F. Supp. 2d 1011 (D. Colo. 2004).  In *Beebe*, Judge Daniel found a protected liberty interest in sex offender treatment where such treatment was required as part of the plaintiff's sentence.  *Id.* at 1017.  Because the plaintiff in *Beebe* was sentenced under SOLSA, the withholding of treatment rendered the plaintiff ineligible for parole and, thus, "work[ed] a 'major change in the conditions of [his] confinement'" *Id.* (citations omitted).

In *Hubler, supra*, Judge Brimmer found that *Beebe* did not apply to cases in which an inmate's release from prison was determined by a definite sentence and was not otherwise contingent upon sex offender treatment. *Hubler*, 2010 WL 935667 at *1.  Unlike the plaintiff in *Beebe* but similar to the plaintiff in *Hubler*, Plaintiff in this case was not sentenced under SOLSA.

(Docket #93 at ¶ (stipulated).) Rather, Plaintiff received a determinate sentence and remains eligible for parole regardless of his participation in sex offender treatment. (*See* docket #93-2.)  Consistent with *Hubler*, the Court recommends the District Court find that Plaintiff had no protected liberty interest in continued sex offender treatment.  *See Hubler*, 2010 WL 935667 at *1.  If the District Court does find such an interest for inmates not sentenced under SOLSA, the Court recommends a further finding that the interest was not clearly established at the time of Defendants' conduct.

Mindful that the District Court may conclude, however, that Plaintiff has sufficiently stated a liberty interest, the Court will proceed to analyze whether Plaintiff has demonstrated on supported facts that the disciplinary hearing procedures were inadequate.

When an inmate is deprived of a liberty interest, he or she is entitled to certain due process protections. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974).  An inmate is not, however, entitled to "the full panoply of rights due a defendant" in a criminal prosecution.  *Id.*  Rather, a prisoner who has a liberty interest at stake must receive: "(1) written notice of the charges against him at least twenty four hours before the hearing; (2) the opportunity to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement of the factfinders as to the evidence relied on and the reasons for the [] action taken."  *Smith*, 899 F.2d at 946 (10th Cir. 1990) (citing *Wolff*, 418 U.S. at 563-66) (citations and internal quotations omitted).  Subsequent to Judge Daniel's decision in *Beebe*, the Colorado Department of Corrections adopted an administrative regulation governing an inmate's termination from sex offender treatment.  Consistent with *Wolff*, AR 700-32 entitles an inmate to detailed notice prior to termination, a hearing before a review panel at which the inmate may call witnesses and present evidence, and a written statement from the review panel

explaining its decision. (Docket #93-22.)

Plaintiff concedes that the Defendants have met the first two requirements of *Wolff*, but takes issue with the third. (Docket #125 at 13.)  Plaintiff interprets the third requirement of *Wolff* to encompass AR 700-32 and argues that he was constitutionally entitled to a disposition based on a preponderance of the evidence.  (*Id.*)  Plaintiff alleges that the third prong of *Wolff* was not satisfied because Defendants' decision did not meet this evidentiary standard.  (*Id.*)

As a general matter, the Tenth Circuit has held that "failure to adhere to administrative regulations does not equate to a constitutional violation."  *Hovater v. Robinson*, 1 F.3d 1063, 1068, n.4 (10th Cir. 1993).   While the Supreme Court has established an evidentiary threshold to accompany the three procedural requirements of *Wolff*, it is not as demanding as Plaintiff suggests. *See Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454 (1985).  Instead, due process requires only that a board's findings be supported by *some* evidence in the record.  *Terry v. Jones*, 259 F. App'x 85, 86 (10th Cir. 2007), *cert. denied*, 554 U.S. 924 (2008) (emphasis added) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454 (1985).  "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.   Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [] board."  *Id.* (quoting *Superintendent*, 472 U.S. at 455-56).   "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."  *Id.*   Contrary to Plaintiff's contention, a decision to terminate treatment would only violate due process if the record was devoid of evidence and provided no support for a board's decision.  *See id.* (citing *Superintendent*, 472 U.S. at 457).

Without re-weighing the evidence presented at the hearing, the Court notes that Defendants offered facts and testimony from a wide range of sources indicating that Plaintiff was showing insufficient progress in treatment.  (Docket # 93-19, p.1.)  In its written disposition, the SOTMP Termination Review Panel provided a detailed account of the evidence upon which it based its decision.  (*Id.* at 1-2.)    This account included, but was not limited to, Plaintiff's statements to Defendants Scollard and Cristelli described in the Court's findings of fact, and the opinions of SOTMP treatment staff regarding the Plaintiff's performance in treatment.  (*Id.*) Notably, the disposition also addressed Plaintiff's evidence and explained why it did not find such evidence persuasive. (*See id.*)

Plaintiff argues that the evidence he presented undermined and ultimately outweighed the evidence presented by Defendants. (Docket #125 at 14-16.)  However, it is not the province of this Court to sift through the record and determine, point by point, whether Plaintiff established a contradiction or raised a question of credibility.  *See Superintendent*, 472 U.S. at 455-56.  Based on the Court's independent review of the record and the written disposition of the review panel, the Court finds that Plaintiff has failed to demonstrate any issue of material fact concerning the sufficiency of the evidence on which Defendants' decision to terminate Plaintiff from sex offender treatment was based.  Accordingly, the Court recommends that District Court grant Defendants' Motion for Summary Judgment on Claim Seven.

## IV.    CONCLUSION

Plaintiff has failed to demonstrate genuine issues of material fact as to whether Defendants Scollard and Cristelli violated his First Amendment right against retaliation as set forth in Claim One, whether Defendants Heil, Scollard, and Tyler violated his Fourteenth Amendment rights as set

forth in Claim Two, whether Defendants Heil, Scollard, Tyler, and Martinez violated his Fifth Amendment privilege against self-incrimination as set forth in Claim Three, whether Defendants Heil, Scollard, Tyler, Martinez, Lins, McCullar, Koch, and Dunlap violated his Eight Amendment right against cruel and unusual punishment as set forth in Claim Four, whether Defendants Scollard, Tyler, Lins, McCullar, Heil, Koch, and Dunlap violated his Fourteenth Amendment rights as set forth in Claim Five, whether Defendants Scollard, Martinez, Lins, McCullar, Koch, and Dunlap engaged in a conspiracy to violate his rights as set forth in Claim Six, and finally, whether Defendants violated his Fourteenth Amendment rights to due process as set forth in Claim Seven. At a minimum, the Court finds that Plaintiff has failed to demonstrate that the rights he asserts in Claims Five and Seven were clearly established at the time of Defendants' conduct.

Accordingly, the Court respectfully RECOMMENDS that Defendants' Motion for Summary Judgment [filed April 29, 2011; docket #93] be **GRANTED** as to all claims.

Respectfully submitted at Denver, Colorado, this 3rd day of October, 2011.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge